[No. 14331. Department Two. January 10, 1918.]

C. M. RUPE, *Respondent*, v. TROY W. KEMP, *Appellant*.[1]

PARTNERSHIP—SALE OF INTEREST—WRITTEN ASSIGNMENT—NECESSITY. A written assignment of a partner's interest to his copartner for cash and a note for the balance is not necessary to transfer the partner's interest in a patent and royalties, where the retiring partner ceased to be a factor in the business and the other partner took entire charge and control; the agreement to evidence the sale by a written assignment being in effect carried out by the conduct of the parties.

APPEAL—TIME FOR TAKING—ENTRY OF JUDGMENT. The time for taking an appeal begins to run from the time of entering formal judgment, and not from the time of the decision before findings were made, notwithstanding formal judgment was entered under compulsion.

APPEAL—NOTICE—CERTAINTY. Where there was but one formal judgment a notice of appeal therefrom is not uncertain in failing to designate the judgment and distinguish it from the decision prior to findings.

APPEAL—PROCEEDINGS TO PERFECT—BOND. A defect in the form of a bond agreeing to pay all costs awarded to appellant instead of against him, is an informality that does not affect its validity.

SAME. Upon appeal from a judgment for $366.99 and also cancelling a note, an appeal and supersedeas bond in the sum of $1,000 is sufficient, where the judgment puts no duty on the appellant to cancel and deliver the note.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered March 29, 1917, upon findings in favor of the plaintiff, in an action on contract, tried to the court. Reversed.

[1]Reported in 169 Pac. 855.

*Smith, Newcomb & Worthington,* for appellant.

*J. W. Russell,* for respondent.

Chadwick, J.—Prior to April 2, 1915, plaintiff and defendant were partners, and, as such, had contracted with one Knight K. Parker, who had applied for letters patent upon a shock absorber to be used on automobiles, for the manufacture and sale of that article within a certain territory. On April 2, 1915, Kemp disposed of his interest in the partnership and its assets for the agreed price of $1,500. Twenty-five dollars was paid in money and a note executed for $1,475, payable thirty days after date. The parties evidenced their intentions by the writing following:

"April 2, 1915.

"Received of C. M. Rupe, a note for fourteen hundred seventy-five ($1,475) dollars and a check for twenty-five ($25) dollars, in consideration of which I agree, on or before April 3, 1915, to transfer to said C. M. Rupe all my right, title and interest and all of the right, title and interest of Harry Kemp in an agreement to market the Parker Shock Absorber made with K. K. Parker and to turn over to said C. M. Rupe all interest in a partnership agreement made with C. M. Rupe, and the said C. M. Rupe agrees to take over and pay all the bills of the firm of Rupe & Kemp, and said C. M. Rupe is to become sole owner of all of the assets of the Rupe & Kemp partnership.          Troy W. Kemp.

"Witness: Geo. W. Kemp."

On May 29, 1915, a payment of $300 was made on this note. No further payments were ever made by the plaintiff. On September 9th following, plaintiff began action against defendant, alleging the transaction as we have detailed it, and that defendant had failed, neglected and refused to transfer to plaintiff any part of his interest in the contract made with Parker to manufacture and sell the shock absorbers, or to turn over to plaintiff any or all of his interest in the partnership assets at the time specified, or at any time.

Defendant, after setting up the transaction, alleges that plaintiff took charge of all the business of the partnership

and conducted it as his own; that, through his neglect and connivance, he had permitted the contract to be cancelled by Parker, and that, if the partnership property was lost to him, it was because of his own neglect and wrongdoing. By way of cross-complaint, he set up the note given by plaintiff and asked judgment for the amount due. A trial was had before the court without a jury. Judgment was entered in favor of plaintiff for the amount paid by him to defendant, and ordering that the note be cancelled.

It is the theory of appellant that plaintiff's action is one for rescission and damages and that he cannot recover because he has, by his own voluntary act, put it beyond his power to place appellant in *statu quo.* Counsel for respondent insists, however, that the action is one for damages, his right resting in a failure of consideration, thus putting no burden of rescission upon him.

Although inclined to the theory of appellant, we are of the opinion that respondent cannot recover even upon his own theory. The record shows that it was the opinion of the trial judge that appellant could not be heard because he had not made out and delivered an assignment as provided in the contract of April 2d. In the agreement it is said, "I agree, on or before April 3, 1915, to transfer to said C. M. Rupe all my right, title and interest, etc., and all of the right, title and interest of Harry Kemp in an agreement to market the Parker shock absorber, etc." But we think respondent is in no position to complain of the technical want of an assignment or transfer of the partnership assets by a writing. The testimony shows that, from the day this contract was executed, defendant ceased to be a factor in the business; that plaintiff took it over and operated it for a certain time; that he paid the $300 on the note; that he negotiated with Parker, the patentee, and agreed with him that the contract should be modified in a material part, and that it was so modified. The testimony shows, inferentially at least, that the cancellation of the contract was a thing understood between Parker

and the plaintiff. Respondent could have done no more with the property if he had an assignment than he did without it.

In determining the rights of the parties we must assume that the value of the partnership assets on the 2d day of April, 1915, was $3,000. The contract was cancelled on August 26, 1915, on account "of the nonpayment of royalties as provided for therein, and further for and on account of your failure to render statements as provided therein."

The contract with Parker provided that the licensees were to make "a full and complete report in writing, on the first Monday of January and July of each year, of all shock absorbers manufactured and sold" by them. Respondent and Parker agreed, one with the other, and modified this contract by interlining these words, "and to remit to licensor all royalties collected by them every thirty days beginning with July 1, 1915." At the time respondent made this modification, he knew that he had the entire charge and control of the partnership property and that the appellant had, as between themselves, retired therefrom. It is unnecessary to notice other material modifications. Respondent, by this act, put it beyond his power to claim a destruction or loss of partnership assets, or to charge, as against his partner, a forfeiture of the contract on the ground of nonperformance.

We cannot believe that a property worth $3,000 in April would be permitted to become valueless on the first day of July for a failure of a report of the doings of a partnership, unless the party having it in his keeping had deliberately set about to destroy it to serve his own ulterior purposes.

Whether the transaction be treated as an executed sale between the parties, or whether we adopt the theory of respondent and say that the contract was not executed because a written assignment was not made out by appellant, respondent cannot recover. If the contract, the execution of which it is insisted is essential to the right of appellant to defend this action, or to recover upon his note, was not made out, it would follow that the partnership was still in existence, and

appellant would have a right of action against respondent for a destruction of the partnership assets, which, by the contract of the parties, were of the value of $3,000. In that event, appellant would be entitled to recover in a proper action the unpaid balance of that value, which, under the facts of this case, would be the amount still due upon the promissory note.

The gist of this case lies not in the fact that the parties failed to execute a paper. If the parties agree to do a certain thing in a certain way, and they do that thing, but not in that certain way, the way agreed upon becomes immaterial and the parties are bound by their contract as executed, and not by, or because of, the manner in which they had first agreed to be bound. It is not the paper but the property that is the subject-matter of this action.

The purpose of the parties in agreeing to give and receive an assignment was to evidence the sale. All testimony, then, with reference to the failure of the appellant to execute the writing is wholly immaterial, for the sale was made and, by the admission of respondent himself, the property passed to his sole ownership. The sale, then, is evidenced by the conduct of the parties, and the assignment would neither add to, nor detract from, the right of either party. The law is elementary. No citation of authority is necessary.

Respondent has moved to dismiss the appeal. The case was tried by the court without a jury on July 26, 1916. On July 29, the court made its decision awarding judgment to the plaintiff. The clerk's minute entry is as follows: "Court finds for plaintiff." On the 7th day of August, the court made findings of fact and conclusions of law. A motion for a new trial was denied on September 16th. On February 16, 1917, defendant moved for an order compelling plaintiff to prepare a formal judgment entry. This respondent did under the compulsion of the court's order. Judgment was entered on March 29, 1917. The notice of appeal was served on April 3d. Respondent contends that the judgment of the

court was rendered on the 29th day of July, 1916, and that the time for taking appeal began to run at that time, or, in any event, when the motion for a new trial was overruled. We have frequently held that the time for the taking of an appeal, in a case tried by the court without a jury, begins to run from the time of the entry of a formal judgment. *Robertson v. Shine*, 50 Wash. 433, 97 Pac. 497; *Gust v. Gust*, 70 Wash. 695, 127 Pac. 292.

The second ground of respondent's motion is that the notice of appeal does not designate with reasonable certainty from what judgment the appeal is taken. This ground is based upon the theory that two final judgments were entered —one on July 29, 1916, and the other on March 29, 1917. But one judgment was entered, that of March 29, 1917.

Respondent moves to dismiss upon the further ground that the bond, which purports to be an appeal and supersedeas bond, is null and void for two reasons. First, because the condition "that appellant shall pay all costs and damages that may be awarded *to him* on appeal, or on dismissal thereof," does not meet the requirement of Rem. Code, § 1722, which provides that such bond "shall be conditioned that the appellant shall pay all costs and damages that may be awarded *against him* on the appeal, or on the dismissal thereof." It is argued that the statute provides that the bond shall run in favor of, and for the protection of, the respondent, while the bond in this case is in form for the protection of the appellant. We regard this objection as technical. The policy of the law, that one for whose benefit a bond is given shall not be denied a recovery because of any technical informality in the bond, has been evidenced by many statutes, Rem. Code, §§ 777, 1413, and 8327, and declared in several decisions of this court.

The only interest respondent can have in the matter is to insure a bond upon which a recovery could be had. Neither appellant nor his surety could defeat a recovery by a plea of a defect in form. The bond is sufficient. *Thomas v. Lee,*

74 Wash. 286, 133 Pac. 446, 134 Pac. 510; *Yost v. Empire State Surety Co.*, 69 Wash. 397, 125 Pac. 167.

It is further urged that, inasmuch as the judgment is for the sum of $366.99, and also for the cancellation and delivery to plaintiff of the note upon which the counterclaim is made, the bond, being in form an appeal and supersedeas bond, is insufficient because the amount of the bond is fixed at only $1,000.

If we understand the theory of respondent, it is that, inasmuch as the amount due upon the note set up in the cross-complaint and which is ordered to be cancelled amounted, at the time the judgment was entered, to the sum of $1,356 and interest, the bond should have been for a sum equal to double the amount of the judgment and the value of the note. Respondent has misread the judgment. It puts no duty of cancelling or delivering the note upon appellant. The note had been filed as an exhibit in the case. The judgment of the court is "that the note counterclaimed on by defendant herein (being on file herein as defendant's exhibit) be cancelled by the clerk of this court and delivered to the plaintiff herein." If the court had directed the appellant to deliver the note for cancellation, it might have been proper to have procured an order for a supersedeas in some prescribed sum, but the judgment calls for nothing more on the part of the appellant than the giving of an appeal bond.

Judgment is reversed, with directions to enter a judgment denying a recovery to plaintiff. Appellant will take judgment for the amount demanded in his cross-complaint.

ELLIS, C. J., MOUNT, MORRIS, and HOLCOMB, JJ., concur.